Lopez v. Allstate Fire and Casualty Good morning, you may proceed, thank you. My name is Kansas Gunn and I represent Allstate in this case. This court should reverse and remand for entry of judgment in favor of Allstate. The district court erred by allowing Núñez Delgado to circumvent Florida Statute 624155 under the guise of a third-party bad faith action. Florida law is clear that PIP is a first-party coverage, and there is no common law cause of action, bad faith cause of action, for failure to tender a first-party coverage. The party has to go under the bad faith statute 624155. And since that statute is in derogation of the common law, it must be strictly construed. So what does that statute require? It requires that the claimant provide the insurance company with notice and an opportunity to cure that alleged violation. And this is called a civil remedy notice, or a CRN for shorthand, and it is an absolute condition precedent for pursuing a first-party bad faith claim for failure to tender a first party cause of action. And since— It seems to me, your predicate, that this is a first-party bad faith claim and not a third-party bad faith claim may be flawed. I'm quoting now from the Williams v. Infinity case, and it says, the essence of a common policy party standing in its place is that the insurer breached its duty to the insured to promptly defend her end, which may include failure to make a good faith offer of settlement within the policy limits, all of which results in the insured being exposed to excess judgment. That seems to me to be our case. Where am I wrong? Well, where you're wrong is, again, they essentially combined to make PIP part of this. And the policy limit that is against—sorry, excuse me—the liability policy limit which would expose the insured to that excess judgment, it's bodily injury liability coverage. And that is a lot different than PIP. I mean, under the law, PIP is a statutory first-party coverage. And that's what they were alleging, that Allstate failed to tender $10,000— Assuming that the plaintiff had an election here, the election was clearly to go the common law route. Is that not clear? They did elect that way, but they were forced to because they didn't file a CRN. And I'd like to point this Court's decision. There's a Northern District case, Weber v. National General Insurance Company. And the judge in that case discusses this kind of context, that there's different types of bad faith cases. And it talks about how there is a first-party's third-party bad faith, a third-party's third-party bad faith, and the most important part, it says, either can be a third-party claim so long as it involves an allegation that an insurer acted in bad faith concerning a claim arising under third-party coverage. And that's the rub here. They're alleging a failure to tender a first-party coverage. And this Court's case in Bell v. Geico, I think, is especially illustrative here. And Bell v. Geico, it was a U.M. claim. The CRN stated that the insurance company failed to tender the U.M. limit where damages were in excess of the policy. Meanwhile, there's a mix-up going on— I don't know if I understand. Your argument is that there simply cannot be a common-law third-party bad faith claim when the issue involves PIP coverage. That is correct. If they wanted to pursue it this way and try to essentially join the BI and the PIP in they were required to file a CRN. And I mean, there's other conditions preceded that didn't happen that are necessary. I thought they also had, in addition to the $10,000 PIP, as to the wife. They made a claim that you didn't pay the bodily injury part, the $25,000 timely. So that was part of the common-law bad faith claim, right? That is correct. And they could make that? They absolutely can make that. And why couldn't the jury just find on that basis alone? We don't know what the jury said. The jury just said they found bad faith. So that would support the verdict. Forget about this PIP business. They had bad faith as to the $25,000 because they dickered around asking for the marriage and everything. I think it was only 26 days or whatever it was, but that gets to the sufficient evidence. But they had a common-law bad faith claim for the failure to timely pay the $25,000, didn't they? I mean, they made that claim. They did make that claim. However... So why doesn't that support the verdict, assuming there's evidence of bad faith as to that part? Well, that's the key. There is no evidence of bad faith. Allstate tendered the limits with... I mean, what I'm trying to say is we don't need to get into the $10,000 PIP or resolve anything under Florida law about whether that's in common-law bad faith, not whether it's first or third. If there's enough evidence to support the $25,000, there's enough evidence to support the B.I. claim, right? If there's enough evidence. However... Okay. Okay. But we're going to get to the evidence. But they made that claim, so we could decide this case, if there's enough evidence of bad faith as to the B.I., without getting into the $10,000 PIP. But the problem with them essentially tying, this was not just presented as... We know they tied it together and that went to the jury on the whole thing. I got that. Okay. All right. If there's not enough evidence, if Judge Anderson has anything more on the PIP, go to the PIP. Is there any Florida case, you cited a northern district of Florida, but is there any state case that holds that you cannot have a common-law claim under PIP at all? Well, yes. There are three cases specifically dealing with a bad faith failure to tender PIP. Scott v. Progressive Express Insurance Company is a fourth DCA case from 2006. Rodante v. Fidelity National Insurance, a second DCA case from 1998. I couldn't get the name there, so give me the site of that one, if you have it. Absolutely. It is 725 Southern 2nd, 1151. Okay. The third case is Paz, P-A-Z, versus Fidelity National, and that's a third DCA case from 1998. And all of these cases specifically deal with an allegation that there is a bad faith failure tender to PIP. And there were CRNs filed in each of these cases. So they did not hold that there could not be a common-law third-party claim? No. They were all addressing it in the first-party context. There's no specific case on point dealing with this exact situation, where you have a third ... But in that case, your argument doesn't make much sense to me. Just because you have a right as a third-party beneficiary, so you may have a first-party claim also, doesn't, to me, seem to suggest that you don't also have a third-party claim. We do not dispute that they have a third-party claim. But there are other cases under Florida law that talks about how this first-party cause of action is predicated on a first-party coverage. All State Indemnity versus Ruiz, Florida Supreme Court case from 2005, said the statutory remedy essentially extended the duty of an insurer to act in good faith where an insured seeks first-party coverage or benefits under a policy of insurance. And again, if we go back to ... Is that cited in your brief? Absolutely. And you have the site right there? I do. The site is 899 Southern 2nd, 1121. And then, again, going back to Bell v. Geico, because that really is the case that is the closest analogy-wise to this case. And Bell v. Geico was a U.M. case where the CRN stated that the insurance company failed to tender a U.M. limit where the damages were in excess of the policy. Meanwhile, there's a mix-up with PIP coverage. And essentially $10,000 went to the ambulance company, and $5,000 of it should have went to the hospital. But Geico, at that point, refused to reissue the payment. And so, fast forward to the bad faith case, and they alleged errors with the PIP handling. And they claimed that that bad faith PIP handling prolonged the tender of the U.M. and release of the hospital lien, and essentially tried to tie the two claims together. This court held that the CRN, number one, did not address PIP, and so, therefore, Geico was not afforded notice and opportunity to be heard, sorry, opportunity to cure the alleged violation. And so, no cause of action ever came into existence. So, we believe that Bell is determinative on this issue. And I believe, Judge Anderson, I believe you were on the panel that decided Bell in that per curiam decision. PIP is a first-party coverage. And so, because there was no CRN here alleging that there was a bad faith tender, Allstate was never given notice of this claim, and they were never given an opportunity to cure. And without this claim of PIP, no reasonable jury could have found that Allstate acted in bad faith for failing to tender that $25,000 limit. And the evidence at trial, they would never accept just the 25 limit. And the plaintiff's own expert said that the handling of the 25 limit to Nunez-Delgado was stellar. There was no delay. So, this is a case, again, their entire bad faith case hinges on this. Say that last thing again. Who said it was stellar? Their expert at trial, the plaintiff's expert, Densmore, he testified. Did they argue to the jury that they acted in bad faith as to both the BI and the PIP? Did they make that claim to the jury? They tied them all together, is what they did. So there was no individual claim, oh, they acted in bad faith towards the BI. It was all tied together. And because it was tied together, again, that's where the CRN comes in. All state had to be given notice of this claim against the PIP part, the PIP first page, that PIP, say PIP ten times in a row. I know if you start saying it's all tied together, they're going to say the estate was all tied together with the wife's claim. So, you know, this all tied together argument has upsides and downsides. Yes. Right? Correct. That's their cross-claim, that it should have been all tied together, the husband and the wife. I don't know. It seems to me the jury could have said, I don't know about the PIP, but they argued the lack of a CRN notice in their bad faith defense, the defense of the bad faith as to the PIP, right? All state absolutely did, on numerous occasions. Motions for summary judgment, judgment as a matter of law at trial. But I'm talking about before the jury, you said you couldn't do bad faith on PIP because of the lack of the notice. Well, we were prevented. The trial judge granted the plaintiff's motion in limine and prevented us from even mentioning a CRN or anything having to do with the PIP. And that motion, sorry, the order is on docket entry 97, and again, excluded any evidence that plaintiffs failed to file a CRN. And it also denied all states' requests to exclude any mention of PIP coverage. So at that point, you know, we're teed up. We've been taking the position, this entire case, that they are not allowed to talk about PIP because there is no CRN. Their calls of action never accrued. And these actions, specifically the district court's orders, allowed them to perceive this way and not allow us to defend it. And I see . . . Let me just say, as a matter of common sense, your position doesn't make much sense to me. It was, you know, filing a CRN is a technical matter. It obviously could be done. It was absolutely clear that this person had injuries far more than the limits of the coverage, including the $10,000 PIP. Why would not a reasonable person in the position of this adjuster offer up the total limits immediately without requiring the medicals, because it was obvious that she had more than the limits, and without requiring the technical filing of the CRN? For some reasons. And first, this regards to Nunez Delgado, and it's our position that it wasn't clear that she was injured. She did not even receive medical treatment. It was obvious that she saw this car run over and kill her husband right next to her. That's correct, but it has to manifest in a physical injury. And that's the key of proceeding for that type of intentional infliction claim under Florida law. There has to be a manifestation of physical injury. And without any medical records, without any medical bills, Allstate did not know that. Well, is mental depression or mental shock or mental anguish a physical injury when you mentally watch your husband get killed? I agree. It would be devastating to watch your husband. I know, but doesn't that qualify as injury under the policy? No. There has to be some type of physical manifestation here, and it kind of begs the point here, because Allstate's entitled to investigate. What about not being able to sleep? Would that work? Would that be a physical manifestation? That absolutely would be. How could you not imagine she didn't suffer that in the first month?  Wait a minute. You're not answering my question. The question is, and if it's not true on these facts, assume it for the question, that it was absolutely obvious that they were going to have to pay this full $65,000. Why would not any reasonable person do that when they had an opportunity to do that without requiring these technical little moves? Well, and this is one of the disputed facts at trial. And that's gone against you, and in my question, it's assumed against you. Yes, it is assumed. Why wouldn't any reasonable person pony up the full $65,000 immediately when they could in order to save the insured from an excess judgment? Well, and again, the reasonableness is PIP was not owe-and-doing. Under PIP, there is very specific statutory requirements that a claimant has to justify. I'm not talking about statute. I'm talking about common sense. Why would not any reasonable person, knowing that they had a chance to save the insured from a potential large excess judgment, pony up the full $65,000 without requiring technical compliance with anything? An insurance company has no duty under Florida law to pay a coverage it does not owe. And it did not owe PIP coverage here. And that's why this is very important here, because again, there's all the conditions preceded having to do with PIP coverage never came into play. The statute, the PIP statute specifically requires under Section 4 that the insured provide reasonable proof of loss in the amount of expenses or loss incurred. Never happened. And after 30 days, if benefits are not paid, the claimant has to make a written demand sent by certified mail to the insurance company. That's Section 10 of the PIP statute. Then a lawsuit for PIP has to be filed. Then a CRN has to be filed. And another wrinkle in this, under the Rodante case that I cited earlier, that's the second prior to filing a CRN extinguishes any right of action for bad faith for an insurer's failure to pay PIP. Allstate eventually paid PIP when it received written demand from the plaintiff's attorneys on this. And because they paid it, no calls of action can ever come into existence. So you have this situation where numerous conditions preceded are not met. And that's why this makes sense. And our argument makes sense. And counsel, you may go on, but you're going to start to draw on your rebuttal if you do. Thank you, Your Honor. I'll sit down. Thank you. May it please the court. My name is Alan Bonner. I'm here on behalf of the Geraldo Lopez Estate and Ms. Nunez Delgado, along with my co-counsel Megan Moore. I want to address with my time today two things, in addition to any questions the court has. First, I certainly want you to help me with whether or not there is binding case law saying that you cannot have a common law third party bad faith claim when the only issue is PIP. Your Honor, if you're asking me if there's case law that precludes our claim, I'm not aware of any, and Allstate has pointed to none. None of the cases cited to address our set of circumstances. Your Honor, Judge Anderson, you asked a moment ago, based on a common sense, why wouldn't a person, a reasonable person in the adjuster's shoes, have proactively offered $65,000 knowing the injuries that took place in this case? Your Honor, the evidence shows that that question was answered by Allstate. The first adjuster to speak to the Lopez family's lawyers on September 9, 2011, recognized the injuries in this case and offered $65,000 inclusive of PIP to settle the claim. It was for the testimony of Mr. Kalbach. That offer was made. It was accepted. It was demanded. He believed it was coming. He informed his client it was coming. He informed his client that if that's all the money there is, I'll waive my fees. Three days later, something happened. He got a phone call from a second adjuster who, according to Mr. Kalbach's testimony, rescinded the offer for both bodily injury limits and PIP limits to Ms. Nunez-Delgado. Said, we're not going to pay those. We want to investigate the marriage. We want to investigate the injuries. Mr. Kalbach testified, so you're reneging. He had written himself a notation that had said that memorialized his expectation that this agreement would be satisfied when he received a check that was for less than the money that had been promised. He wrote a note. Where is the rest of it? Where's the PIP for the misses? So in this case, you're not asked to address whether in the abstract an insurance company in all states position had an affirmative duty to look at the bodily injury limits and the PIP limits and make an offer to settle on behalf of their insured tortfeasor. I submit to you that had that been the case, that they should have, that good prudence would say and good faith would say they should do that. But your issue is, in fact, much narrower. It is, having made that offer, was there a duty of good faith to your insured tortfeasor to see it through? Now, there's been a discussion, and I said there are two matters I wanted to address. The first is why this case is not a case of first party bad faith. And the second is why the court's decision to bifurcate the verdict was a misstatement of Florida law. With respect to whether this is a first party claim, we have never raised that all state breached a duty of good faith to Miss Nunez Delgado. Every single case cited in all states briefed with respect to PIP involved the PIP claimant saying I was owed this contractually and they failed to pay. In this case, what we have presented is that all state had a duty not to Miss Nunez Delgado to pay $10,000, but to Miss Soto to settle for $65,000 after it made that offer. Now, the person who originally looked at this claim did not testify at trial, but it was a supervisor for all state who wrote a claims note that said, describe the event and wrote limits warranted. That happened two days after the accident on September the 8th. On September the 9th, Danita Motake, the adjuster who spoke to Mr. Kalbach, who also did not the full $65,000. That day, a third adjuster, Miss Bernay, who did testify and who was the person that Mr. Kalbach spoke to on the 12th and who, per Mr. Kalbach's testimony, reneged, rescinded the offer, left a message at Mr. Kalbach's office, which is memorialized in the claims notes that says, spoke to Mr. Kalbach's paralegal, advised that all state would be moral to them. The evidence in this case supported the jury inference that the offer was made. Crediting that evidence, the question is then, is it sufficient evidence on which the jury could find that it breached its obligation of due faith to Miss Soto, the insured tort feeser, or is it, as all state says, decidable as a matter of law that whether it made this claim upon it or not, no bad faith claim can lie. Bad faith hinges, a third party common law bad faith claim, which predates the statute, hinges upon the totality of the circumstances. The law is that these, the issues of reasonableness, prudence, due care, are typically issues for the jury. We're not asking the court to find as a matter of law that reneging on a settlement offer inclusive of PIP is bad faith. We are suggesting that it is a question of fact. Different cases might have different results. The jury in this case plainly saw this evidence and thought it was, it met the standard of that the plaintiffs had to show that they should have and they could have settled this case for $65,000 and avoided the entirety of the excess judgment that was entered against Miss Soto. In other words, notwithstanding, even if, even if, I guess, there is not a third party bad faith claim with respect to PIP only, just assume that. Uh, this case doesn't have to address that because there was, and the jury could find, there was an offer of a waiver in effect of that and an offer of the full $65,000 to settle and therefore a duty to follow through on that rather than expose the insured to an excess judgment. That's correct. All state took the matter from the court's hands to decide whether it had an affirmative obligation to offer $65,000 because it did. It made that decision for us, or at least our evidence that the jury saw suggested that. It made the decision that this was the best way to get Miss Soto out of trouble. We have a general verdict, so we don't know whether the jury found on the basis of the basis of the general refusal to provide the full limits. That's correct. There's no, this is a general verdict form. It included an affirmative defense. We also don't know whether they considered the offer and looked at the whole bottle of wax and said, well, they had the offer. They reneged on it. Then they quickly said, we'll pay the estate $25,000. Plus $5,000. Plus $5,000, but they drug their feet on the other. So they could have kind of, how they found for bad faith as to one and bad faith the other. It seemed to me that they really looked at the whole package including the offer and that they then said, okay, we will at least pay the $35,000 or the $30,000. So it's hard to know what the jury did, but they've made a clear finding of bad faith as to one part and no bad faith as to the other, right? That is correct, Your Honor. I agree with your . . . So that bad faith would include, with respect to the wife, would include both the $25,000 and the pimp. Is that what you're aiming at, Judge? Yes, yes, yes. It just seems like there are a lot of ways the jury could have decided this case and we don't know. The manner that you just offered is, of course, one of the plausible ways that the court, or sorry, that the jury could have decided this case. We know what they did. We can come up with a plausible explanation, but we really don't know the answer to this particular question. That is true, Your Honor. I do, but what you have brought up with respect to the decision, parsing out bad faith with respect to the handling of one claim, not the other, does lead to our cross appeal, which hinges principally on the decision to present this case to the jury as two claims. Now, when this . . . That's really, you mean, as to how the judge . . . Instructed, yes. How the judge did the verdict for him. Yes, and the instructions. Now, again . . . But he had two plaintiffs. There were two plaintiffs taken by assignment and one duty of care to Ms. Soto. And, of course, the duty of good faith that we allege that had been violated was not a duty of good faith to either the estate or Ms. Nunez-Delgado, but was a single duty of good faith to Ms. Soto, the insured tortfeasor. If there had been unrelated plaintiffs here, let's say that Soto had a seizure, bumped into another car, unrelated, and then bounced off of that and killed the defendant here, I mean the victim here, plaintiff's husband, and damaged the wife sitting there looking at it, that would have had three claims, the unrelated car and the estate and the wife. Certainly, the unrelated car wouldn't be part of the same claim, would it? No, it wouldn't. And I submit to you, it's not the number of claims per se that dictates the number of bad faith claims. It's the opportunity which the insurance company had a duty to take, the settlement opportunity that the insurance company had a duty to either extend or accept. And if there are multiple settlement opportunities, each of which the insurance company should have accepted but did not do, you would be presented with a case with multiple bad faith claims. Of course, our evidence was that there was a single opportunity, that being that there was one opportunity to protect Ms. Soto and that the insurance company violated that duty to do it. Now, the court would— But it can't be. I accept that the duty to settle is to be insured Ms. Soto, but if they're two separate claims, one person died, one person had, at least at the time of the accident, no noticeable physical injuries. Obviously, she had emotional. That was going to quickly lead to physical injury. I mean, I can't believe they could make different decisions. And, Your Honor, I would stipulate they could. Okay. There is no error— Even if the duty is to Ms. Soto, let's say the policy was $200,000, you know, they may not have had to pay that to the wife. They might have been able to reasonably say $100,000 or something. It can't be that they can't separate the claims. And you're exactly right. And act differently. Okay. You've answered my question. I think I understand your position. Well, I just want to add this to it. There would be no error in a verdict form that allowed the jury to parse out the two claims, both based on all state's evidence and their argument that, well, we really handled at least part of it correctly. That's a— On the facts of this case, there would be no objection to an interrogatory of that sort. The problem with the instruction and the verdict form is that it asks the jury to consider the totality of the circumstances solely with respect to all state's conduct vis-a-vis each claim. You can't square that with the case law in Florida that says, and I'd cite specifically to the Burgess versus Infinity case, that the totality of the circumstances must apply to everything. When you tell the jury that they can look at this claim and not— Sorry, look at the estate's claim, the offers to settle, and forget that that was contingent upon settling Nunez-Delgado's claim. While it's plausible they found no bad faith as to the estate, it's also plausible that they were misled and did not look at the totality of the circumstances and instead disregarded the fact that this was a contingent offer, or a contingent settle. Sorry, a settlement that included both claims. It seems to me that there's at least a strong argument that you ought to be stopped from insisting upon a single claim here because it seems pretty clear to me that there was no wrongdoing with respect to the estate or even with respect to the $25,000 to the wife. The only possible bad faith had to do with holding the pimp back, and yet you tried to use especially the $25,000 to the wife as a lever, as leverage to get the other $10,000. So it seems to me you bear some culpability, the lawyer below, whoever that was, for this situation. Why should you not be stopped? Your Honor, there is not an estoppel because the reason why Mr. Lopez wanted to settle these altogether was he wanted, and he testified to this, all the money was going to his mother. His mother was the sole beneficiary of the estate. She had her own injuries. From her vantage point, it might have been two claims, but it was all going to her. It was how she would be resolved, and she would continue to be involved, and she's in a terrible state during these initial months. She remains in a terrible state. That continuing with litigation was going to be detrimental to her. She was going to have to be deposed. This created the main drive on trying to get the settlement done quickly, but for everything. In other words, Allstate was free to argue this was an unreasonable settlement attempt, but the jury was also entitled to find that this was a reasonable settlement offer motivated by legitimate reasons. Of course, there was an affirmative defense that was on the verdict form that would have resolved Allstate had it found that this was an unreasonable settlement attempt, that there was no reasonable possibility of settlement. I understand. I do have to ... Go ahead. I'm going to ask a question about another matter. Just because my time's up and I want to correct something that was said with regards to the record, there was no testimony from the expert with respect to Ms. Nunez-Delgado's claim being handled in a stellar matter. His testimony, I would point you to record 52930 was that the offer to Ms. Nunez-Delgado was problematic because it did not satisfy the full demand. He did testify with respect to the handling of the estate's claim. He did characterize that handling as stellar. That is on page 523, 524 of the record, but I think previously you were told that it was with respect to both claims. The record does not support that. Should we, hypothetically, if we bought your argument about there should have been only one claim instead of two, would that not pretty clearly mean that we would vacate the entire judgment below and not just the judgment that you lost and therefore you would be put in a position of having to go to the jury again on the underlying bad faith issue? Your Honor, with respect to that, I believe the doctrine of invited error gives the answer. A party cannot complain of an inconsistent verdict when the inconsistency was brought upon a verdict form that both misstated the law and invited that inconsistency. This was not an issue that all state had raised, so I did not brief it. I'm prepared to brief it if you need supplemental briefing. It is an issue on which basis it seems to me it would not be fair to give you the benefit of the verdict in your favor when the jury pretty clearly, it seemed to me, was thinking there is no bad faith with respect to a good part of this and then there may be some bad faith with respect to the PIP thing and so they split the verdict and if they had to decide up or down, they may well decide against you and that just seems fair. The only answer I have to you, Your Honor, is this doctrine and the cases that have interpreted invited error which say that a party who complains of an inconsistency within a verdict but who was the impetus for that or the cause of that inconsistency by requesting a jury instruction that permitted the jury or misled the jury to believe. But that wouldn't preclude us from doing justice in the case. No, it would not, Your Honor. Thank you, counsel. Thank you, Your Honors. Ms. Gooden, you reserve three minutes. Now, Ms. Nunez-Delgado's counsel here basically creates a false narrative that there was a duty under Florida law for all state, a duty that ran to Ms. Soto for all state to pay PIP and there is no duty under Florida law. Under PIP, an insurance company's duty runs to the claimant, not to the insured and this is the fundamental difference between PIP coverage and liability coverage. Liability coverage is intended to protect the insured from excess judgments whereas the PIP coverage is intended to protect the claimant making it. And again, it's a first-party statutory system. And because there's no duty under Florida law, this court cannot create a duty and the district court could not create a duty. And there's two cases that say that explicitly. One is Maldonado v. First Liberty and the other is Nipper v. All States. And in both of those cases, the plaintiff essentially tried to create. You cite those in your brief. Yes, I do, Your Honor. Maldonado and what's the other one? Nipper, K-N-I-P-P-E-R. And in both of those cases, the plaintiff tried to create a duty under Florida law that did not exist and the courts refused and said you cannot just come up with duties. The duties of an insurance company in a third-party bad faith case are very explicit under the case. And it's our position too here that the jury, without the PIP, they wouldn't have found bad faith in favor of Allstate. And again, if you look back at the other stuff that happened to Allstate, that leads into its other issues that it could not defend on the CRN because it was precluded in emotional limiting from talking about it. The trial court struck its only expert witness that was going to address PIP and the bad faith handling and whether there was any. So this jury only received a one-sided view. And the other thing, and again, this leads to another issue in our brief, is this jury never ruled on causation. It never ruled that Allstate's actions that they found were in bad faith caused this excess judgment. And this court dealt with that in Pereira, and it certified a question to the Florida Supreme Court about whether or not causation has to be proven. And the Florida Supreme Court answered that. The court charged on causation. I just looked at the jury instruction. The court said you had to prove it was caused. Only there's one sentence that says resulting in bad faith. However, the court basically denied our request for causation. And that's instruction 10 and 12. But there was no line item on the verdict regarding causation. You don't have to put a line item on verdict causation. The district court has a lot of discretion. You don't have to do every, no doubt. I want to ask you, why should we not hold and pre-demit all of your arguments about the no third party common law claim about PIP? Hold that your offer that the jury could have found, you made a $65,000 offer and then constituted a waiver in effect of any of these technicalities. And again, that statement right there and those facts are irrelevant to whether or not all states should get judgment as a matter of law or summary judgment. And the reason why is because of the petition's precedent on PIP, whether the payment of it. And I don't believe you answered my question. If you do, I don't see how it's relevant. Basically, it never owed the coverage. And there's Florida case law that says that an insurance company can't be held liable for an insurance coverage it does not owe. If it enters into a contract to pay $65,000, it can't be held to that? So there was no contract here. So Mr. Kalbach testified at trial that any acceptance of this was conditioned upon him confirming assets in Miss Soto. And this is contract 101. That's not mere acceptance. So if this alleged offer was made, it had to be accepted unconditionally. By placing conditions on it, there is- They could consider it in the totality of the circumstances, right? Yes. Okay, I'm looking at instruction number 12. To prevail on the bad faith claim, the claimant must prove by the preponderance of evidence to ensure acted in bad faith and that the bad faith caused the excess judgment. I have that as part of the charge. Number 12, it was given. Is that incorrect? I'm talking about looking at the charge in the record in total as what he read to the jury. I thought that was given. Maybe it wasn't. No. 12 is one of the ones that the court kept out. Okay, so then let's go. I see what you're saying. And that the bad faith resulted in the excess judgment. Yeah, that's- That's the language change from your charge. Correct. And that's- I see what you're talking about. The resulting language is the only thing that got charged to the jury. 12 was kept out, and then in 10, language, and if so, whether that bad faith- I think Judge Hall has your answer. Thank you. Did you have anything else, Judge Anderson? Thank you both very much. This court will be in recess until 9 a.m. tomorrow morning.